IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TINA HARRIS
    *Plaintiff*,

v.

JOHNS HOPKINS HEALTH SYSTEMS
CORPORATION,
    *Defendant*.

Civil Action No. ELH-23-701

**MEMORANDUM OPINION**

Plaintiff Tina Harris filed suit in State court against defendant "Johns Hopkins Health System School of Medicine." *See* ECF 3 (the "Complaint").[1] She appears to allege that defendant deprived her of her vested pension. Harris also alleges that defendant violated the Maryland Wage Payment and Collection Law ("MWPCL"), which is found at Md. Code (2016 Repl. Vol., 2022 Supp.), §§ 3-501 *et seq.* of the Labor and Employment Article ("L.E."). And, she possibly alleges hostile work environment and wrongful termination. Plaintiff seeks to be "paid her fully vested pension" as well as statutory damages and attorney's fees. ECF 3.

Suit was initially filed in the District Court of Maryland for Baltimore County. ECF 1-2. Johns Hopkins Health System Corporation ("JHHS" or "Hopkins") timely removed the case to federal court, based on federal question jurisdiction, pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq.* ECF 1 ("Notice of

---

[1] Defendant asserts that plaintiff likely meant to sue Johns Hopkins Health System Corporation ("JHHS"). *See* ECF 2 at 1 n. 1; ECF 5-1 at 1 n. 1; ECF 5-2, ¶ 3. In the Opposition, however, plaintiff continues to refer to defendant as "Johns Hopkins Health System School of Medicine." *See* ECF 8.

Removal"); *see also* ECF 7.  Plaintiff does not seek a remand, except to achieve service of the suit. ECF 8 at 3.

JHHS has- moved to dismiss the suit, pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) . ECF 5.  The motion is supported by a memorandum (ECF 5-1) (collectively, the "Motion"), as well as an exhibit. ECF 5-2 (the "Duke Affidavit"). Plaintiff opposes the Motion. ECF 8 (the "Opposition"). JHHS replied. ECF 9 (the "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall construe the Rule 12(b)(5) portion of the Motion as a motion to quash and grant it. I shall also grant plaintiff leave to amend her suit.  Therefore, I shall deny, as moot, the Rule 12(b)(6) portion of the Motion.

## I.      Factual Background[2]

The suit was filed on a form complaint.  ECF 3.  The entirety of the factual allegations are as follows, *id.*:

> Ms. Harris was employed for nearly two decades by Johns Hopkins School of Medicine. When Johns Hopkins School of Medicine moved to Johns Hopkins Health Services ("JHHS") Ms. Harris was offered and declined a paltry severance offer because it would deprive her of the right to collect her fully vested pension. Ms. Harris made the transition to JHHS. After a long history of excellent performance with the Medical School, Ms. Harris began her duties with JHHS and was provided little or no training. She was not given a handbook or training materials. Instead, she was faced with immediate pretextual, undue and constant criticism from her new supervisor. The constant harassment appears to have been a thinly disguised effort to force her to leave because she declined the severance and to deprive her of her pension. Harris should be paid her fully vested pension as well as statutory damages under the Maryland Wage Payment Collection Law and attorneys' fees.

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

## II.      Fed. R. Civ. P. 12(b)(5)

### A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(5), defendant moves to dismiss the Complaint for insufficient service of process, claiming that, as a result, the Court lacks personal jurisdiction. ECF 5; ECF 5-1 at 2, 6.  Under Fed. R. Civ. P. 12(b), before submitting a responsive pleading, a defendant may move to dismiss a complaint, *inter alia*, for "(4) insufficient process" or "(5) insufficient service of process." Generally, "[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," and a "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery[ ] of the summons and complaint." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2004, Supp. 2021). "Once service has been contested," as here, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *accord, e.g., Baylor v. Wegman's Food Market, Inc.*, WDQ-14-3330, 2015 WL 4396609, at *1 (D. Md. July 16, 2015).

Service of process, which is governed by Fed. R. Civ. P. 4, is a prerequisite to litigating in federal court.  In its absence, a court lacks personal jurisdiction over the defendant." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.,* 935 F.3d 211, 228 (4th Cir. 2019). Although the court can "construe Rule 4 liberally" when the service of process, even if technically deficient, provided actual notice to the defendant, the "plain requirements" for effecting service cannot be ignored. *O'Meara*, 464 F. Supp. 2d at 476 (quotations omitted); *see also Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 305 (4th Cir. 2016) ("Actual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff.").

Rule 4(a) specifies the contents of a summons. Among other things, it "must . . . (F) be signed by the clerk; and (G) bear the court's seal." Of relevance here, Fed. R. Civ. P. 4(c)(1) mandates that a "summons must be served with a copy of the complaint." *See Danik v. Hous. Auth. of Baltimore City*, 396 Fed. Appx. 15, 16 (4th Cir. 2010) ("The federal rules require that a defendant be served with the complete pleading and a copy of the summons."). And, "[t]he plaintiff is responsible" for service within the time provided by Rule 4(m). *Id*.

Under Rule 4(e), a plaintiff must effectuate service through one of the expressly authorized methods.  Pursuant to Rule 4(e)(1), service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ."  Process may also be served by delivering a copy of the "summons and complaint" to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).

Under Rule 4(l)(1), a plaintiff must submit proof of service "by the server's affidavit." But, "[f]ailure to prove service does not affect the validity of service," and "[t]he court may permit proof of service to be amended." Fed. R. Civ. P. 4(l)(3).

Of relevance here, Maryland Rule 2-121(a) permits service by mailing **the summons and complaint** to the person to be served by certified mail, requesting Restricted Delivery, so as to show who was served, the date, and the address of delivery. *Baylor*, WDQ-14-3330, 2015 WL 4396609, at *2 (emphasis added).

Under Maryland law, "the purpose of service of process is to give the defendant fair notice of the action against him and the resulting fair opportunity to be heard*." Conwell Law LLC v. Tung,* 221 Md. App. 481, 500, 109 A.3d 1227, 1238 (2015) (quoting *Mooring v. Kaufman,* 297 Md. 342, 350, 466 A.2d 872, 876 (1983)). And, "failure to comply with [the Maryland Rules

governing service of process] constitutes a jurisdictional defect that prevents a court from exercising personal jurisdiction over the defendant." *Flanagan v. Department of Human Resources*, 412 Md. 616, 624, 989 A.2d 1139, 1143 (2010) (citing *Lohman v. Lohman*, 331 Md. 113, 130, 626 A.2d 384, 392 (1993).

## B.  Analysis

Defendant asserts that it was never served with the Complaint. Therefore, the defendant contends that the suit should be dismissed for insufficient service of process. ECF 5-1 at 6-7.

JHHS has submitted the affidavit of Neil Duke, Esquire.  ECF 5-2.  He is the "Practice Group Leader and Chief Legal Counsel for employee affairs and accessibility coordination of the legal department" at JHHS. *Id.* ¶ 2. I may consider the Duke Affidavit, for the purpose of addressing the claim of insufficient service of process. *See Goldfarb v. Mayor of Baltimore*, 791 F.3d 500, 506 (4th Cir. 2015) ("[O]nly under Rule 12(b)(6) does it matter whether the district court violated Rule 12(d)'s limitation on what materials the court can rely on without converting the motion to dismiss into one for summary judgment.").[3]

Notably, Duke avers: "On February 27, 2023, JHHS received a copy of the summons via certified mail, but this mailing did not contain a copy of Plaintiff's Complaint." ECF 5-2, ¶ 4. Duke explained that he "personally retrieved a copy of the Civil Complaint from the District Court for Baltimore County, Maryland." *Id.* ¶ 5. Of significance, plaintiff does NOT contest any aspect of the Duke Affidavit. *See* ECF 8. Indeed, plaintiff appears to concede that "plaintiff inadvertently omitted" the Complaint from "the package sent to Hopkins." *Id.* at 2.

---

[3] I only consider the Duke Affidavit insofar as it is relevant to the issue of service of process. Indeed, the defendant's argument for failure to state a claim and ERISA preemption do not rely on, or even reference, the Duke Affidavit. *See* ECF 5-1.

Plaintiff has not carried her burden to establish timely or proper service of process. *See O'Meara*, 464 F. Supp. 2d at 478 (stating plaintiff bears the burden and that "the plain requirements for the means of effecting service may not be ignored"); *see also Lehner v. CVS Pharmacy,* RTW-8-1170, 2010 WL 610755, at *3 (D. Md. Feb. 17, 2010); *Hoffman v. Baltimore Police Dept.*, 379 F. Supp. 2d 778, 786 (D. Md. 2005).

However, insufficient service of process does not always necessitate dismissal of a case. *See, e.g., Pugh v. E.E.O.C*., DKC-13-02862, 2014 WL 2964415, at *3 (D. Md. June 30, 2014). Rather, "'when service of process gives the defendant actual notice of the pending action, the court may construe Rule 4 liberally.'" *Miller v. Baltimore City Bd. of Sch. Comm'rs*, 833 F. Supp. 2d 513, 516 (D. Md. 2011) (quoting *O'Meara*, 464 F. Supp. 2d at 476). Generally, "[w]here 'the first service of process is ineffective, a motion to dismiss should not be granted, but rather the Court should treat the motion in the alternative, as one to quash the service of process and the case should be retained on the docket pending effective service.'" *Pugh*, 2014 WL 2964415, at *3 (quoting *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983)); *see also Thomas v. Nelms,* CCE-09-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013).

JHHS has not been prejudiced by the insufficient service; the case is in its infancy; and JHHS learned of the suit because it received the summons. *See Mohamed v. Soltesz, Inc.,* PX-20-3043, 2021 WL 3603045, at *2 (D. Md. Aug. 13, 2021).  Therefore, the Court will allow plaintiff the opportunity to cure the deficiency.

As discussed below, the Court will grant plaintiff the opportunity to amend her Complaint. And, if she chooses to amend, she must serve the Amended Complaint in accordance with Rule 4 and the applicable Maryland rules, unless the defense agrees to waive service under Fed. R. Civ. P. 4(d). *See Peamon v. A & R Development Corp.,* WMN–06–2974, 2007 WL 5600608, at *2 (D.

Md. Mar. 20, 2007) ("[T]he Court will give Defendant 15 days in which to waive service of process, consistent with the duty to save unnecessary costs reflected in Rule 4(d).").

### III.    State Law Claims

Defendant contends that because plaintiff seeks to "be paid her fully vested pension," the action is subject to ERISA, 29 U.S.C. § 100 *et seq.* ECF 1 at 2. But, defendant maintains that plaintiff fails to State an ERISA claim. ECF 5. Therefore, according to defendant, the suit is subject to dismissal under Rule 12(b)(6).  ECF 5-1 at 2, 7.

### A.  Standard of Review

Defendant has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).  ECF 5.  A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration

in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

Notably, a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing.  *See, e.g.*, *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

## B.      ERISA Preemption Generally

ERISA was "enacted to protect the interests of participants in employee benefit plans and their beneficiaries. . . ." *Marks v. Watters*, 322 F.3d 316, 322 (4th Cir. 2003); *see* 29 U.S.C. § 1001(b). It does so, *inter alia*, by "setting 'various uniform standards [for employee benefit plans], including rules concerning reporting, disclosure, and fiduciary responsibility.'" *Retail Industry Leaders Assoc. v. Fielder*, 475 F.3d 180, 190 (4th Cir. 2007) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91 (1983)).

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), the Supreme Court said: "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, which are intended to ensure that

employee plan benefit regulation would be 'exclusively a federal concern.'" (Citations omitted). *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 646 (1995) (explaining that "[t]he basic thrust of the pre-emption clause was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (recognizing "the reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans as ERISA's crowning achievement," and noting that the legislation's sponsors "emphasized both the breadth and importance of the preemption provision" to "establish pension plan regulation as exclusively a federal concern.") (internal quotation marks and citations omitted); *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452–53 (4th Cir. 1992) ("The preemption of state laws relating to employee benefits guarantees that plans and plan sponsors are subject to only a single, federal set of requirements.").

The case of *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2004), provides guidance.   There, the Fourth Circuit observed: "In the ERISA context, the doctrines of conflict preemption and complete preemption are important, and they are often confused."  The doctrine of conflict or ordinary preemption, however, does not provide a basis for removal.  *Id.*  Rather, only claims that are "'completely preempted' by ERISA's civil enforcement provision, § 502(a), are properly removable to federal court.  *Id.* (citation omitted).  Under conflict or ordinary preemption, "'state laws that conflict with federal laws are preempted, and preemption is asserted as a federal defense to the plaintiff's suit.'" *Id.* at 370-71 (cleaned up) (quoting *Darcangelo v. Verizon Commc'ns, Inc.,* 292 F.3d 186, 187 (4th Cir. 2002), in turn quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). "For ERISA preemption purposes, 'State law'

includes both statutory and common law." *Custer v. Sweeney*, 89 F.3d 1156, 1166 (4th Cir.1996) (citing 29 U.S.C. § 1144(c)(1)).

Notably, a plaintiff is "barred" from pursuing a claim under state law that is subject to conflict preemption, even if a federal remedy is not available. *King v. Marriott Int'l Inc.*, 337 F.3d 421, 425 (4th Cir.2003); *see Marks*, 322 F.3d at 323. Despite the severity of such a result, the doctrine recognizes that "it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, while providing no substitute federal action." *King*, 337 F.3d at 425.

In the ERISA context, conflict preemption is rooted in § 514(a), codified at 29 U.S.C § 1144(a). It states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . . ." In construing § 514(a), the phrase "relate to" is "'given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554, 560 (4th Cir. 1994) (*quoting Pilot Life Ins. Co.*, 481 U.S. at 47); *see District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129–30 (1992). Stated another way, "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *Greater Washington*, 506 U.S. at 129–30 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). Put simply, "preemption under § 514 precludes prosecution of the preempted state-law claim." *Marks*, 322 F.3d at 323.

In contrast, complete preemption is a jurisdictional doctrine. "When [a] federal statute *completely* pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."

*Darcangelo*, 292 F.3d at 187 (emphasis in original). So, "the doctrine of complete preemption 'converts an ordinary state common law complaint into one stating a federal claim.'" *Id*. (quoting *Taylor*, 481 U.S. at 65); *accord Pinney v. Nokia, Inc*., 402 F.3d 430, 449 (4th Cir.2005). This, in turn, endows a federal court with subject matter jurisdiction over claims lodged under state law. *See Darcangelo*, 292 F.3d at 187.

To determine whether a state law claim is completely preempted under ERISA, courts look to its "civil enforcement provision," ERISA § 502(a), codified at 29 U.S.C. § 1332(a), which "completely preempts state law claims that come within its scope and converts these state claims into federal claims under § 502." *Darcangelo*, 292 F.3d at 187; *see Taylor*, 481 U.S. at 65–66. Section 502(a), titled "Persons empowered to bring a civil action," provides, in relevant part, that "a participant or beneficiary" may sue "to recover benefits under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1).

In *Sonoco Products*, 338 F.3d at 372, the Fourth Circuit outlined "three essential requirements for complete preemption," as follows:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.  [Citations omitted; alterations in original]

Notably, complete preemption does not provide for dismissal of a claim. In *Darcangelo*, 292 F.3d at 187, the Fourth Circuit explained: "[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502." In other words, a state law claim that is completely preempted should be evaluated as a claim under

§ 502 for purposes of a motion to dismiss. *See Darcangelo*, 292 F.3d at 195–96 (evaluating preempted breach of contract claim as a claim for breach of fiduciary duties under § 502).

There is some tension under ERISA between conflict preemption and complete preemption. Whereas conflict preemption mandates dismissal of a state law claim, complete preemption mandates that it be converted into a federal claim. In *Marks*, 322 F.3d at 322–23, the Fourth Circuit made clear that, even when a defendant asserts the defense of conflict preemption under § 514, dismissal of the claim is not proper if the claim is completely preempted. It said, *id*:

> . . . ERISA precludes the prosecution of preempted state-law claims that are not otherwise saved from preemption under § 514(b) (2)(A) unless they fall within the scope of the exclusive civil enforcement mechanism provided by § 502(a) of ERISA, 29 U.S.C. § 1132(a), in which case they must be treated as federal causes of action under § 502(a) . . . . Thus, if a state-law claim preempted by § 514 is not included within the scope of § 502(a), the claim is susceptible to a § 514 defense, whether it is brought in State or federal court. But if a state-law claim falls within the scope of § 502(a), it is "completely preempted" and therefore treated as a federal cause of action.

Thus, a court addressing preemption of a state law claim under ERISA should determine whether the claim is subject to conflict preemption under § 514, and therefore barred, or complete preemption, in that it falls within "the exclusive civil enforcement mechanism of § 502," and therefore should be converted to a federal claim. *Marks*, 322 F.3d at 323.

Accordingly, I will apply the standard for conflict preemption under § 514 to determine whether plaintiff is barred from pursing her state law claims. I will then consider whether to convert the claims under complete preemption, a possibility that defendant has addressed.

### C. Preemption of Plaintiff's State Law Claims

As noted, § 514 of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." The parties do not dispute that the pension plan qualifies as an "employee benefit plan" or that plaintiff has lodged claims under "State law," as those terms are used in § 514. Therefore, it appears that the pension plan is

governed by ERISA. *See McKelvey v. Canteen Corp.*, HAR 93–2474, 1994 WL 149606, at *5 n. 10 (D. Md. Feb. 16, 1994) (assuming at the motion to dismiss stage ,that the plan in question constituted an "employee benefit plan" under ERISA, because defendant argued for ERISA preemption).

Plaintiff does not address preemption under § 514. *See* ECF 8. Instead, she argues that the allegations in her Complaint are sufficient to maintain a claim under Section 510 of ERISA.

Section 510 of ERISA, 29 U.S.C. § 1140, is titled "Interference with Protected Rights."  It makes it unlawful, *inter alia*, "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . . ."

Plaintiff clearly states that JHHS's "***constant harassment*** appears to have been a thinly disguised effort to force her to leave because she declined the severance ***and to deprive her of her pension.***" ECF 3 (emphasis added). Although plaintiff argues for relief under the MWPCL, she seeks to recover pension funds under an ERISA-governed benefit plan.

Arguably, plaintiff's allegations give rise to an unlawful discharge claim. ECF 3. However, such a claim could be brought under ERISA, and is therefore preempted. *See Porter v. Elk Remodeling, Inc.*, LO-9-446, 2010 WL 2346625, at *8 (E.D. Va. June 9, 2010) (concluding that common law wrongful discharge claim was preempted by ERISA, as it could have been brought under ERISA § 502). Similarly, to the extent plaintiff alleges a hostile work environment claim or a claim under the MWPCL that relates to an ERISA-governed plan, it too is preempted. *See Potter v. Metro. Life Ins. Co.*, RCC-11-363, 2011 WL 6009977 at *2 (S.D.W. Va. Dec. 1, 2011) ("ERISA

§ 510 may preempt state law claims where some part of the complaint rests on an allegation that termination or discipline was motivated by disruption of a plaintiff's covered benefits.").

It is true that "a state law that is preempted under § 514 (conflict preemption) will not always be preempted under § 502 (complete preemption)." *Darcangelo*, 292 F.3d at 191 n. 3. But, to the extent that plaintiff alleges a State law cause of action in her Complaint, such a claim is completely preempted, as it "fits within the scope of ERISA § 502." *Id.; see, e.g., Neering v. AT&T,* RK-21-57, 2021 WL 2546724, at *4 (W.D. Mo. June 21, 2021) (concluding that plaintiff's hostile work environment claim was completely preempted, as it was "substantially dependent" on defendant's interference with her access to benefits under an ERISA-governed plan); *Pastine v. Elkins Regional Convalescent Center, Inc.,* JPB-18-24, 2018 WL 11512227, at *4 (N.D. W. Va July 3, 2018) ("Accordingly, § 502 completely preempts the plaintiff's claim for retaliatory discharge as alleged. . . ."); *Croxson v. Seneca One Finance, Inc*., PWG-16-449, 2016 WL 6462039, at *5 (D. Md. Nov. 1, 2016) (concluding that ERISA completely preempted State law wrongful discharge claim); *Daisey v. Weiss,* DKC 13–3332, 2014 WL 3778697, at *3 (D. Md. July 29, 2014) (concluding that MWPCL and wrongful discharge claims, to the extent they pertain to an ERISA-governed plan, were completely preempted); *Dochterman v. First Miss. Corp*., 831 F. Supp. 556, 557–58 (S.D.W. Va. 1993) (concluding that State law "discharge" portion of a duty of good faith and fair dealings claim was in "direct conflict with § 510" and therefore completely preempted under ERISA).

Therefore, plaintiff's allegations will be construed as a claim brought pursuant to § 510 of ERISA. *See Sonoco Products*, 338 F.3d at 372; *see also Hooker v. Tunnell Gov't Servs. Inc.*, GJH-18-2352, 2019 WL 651747, at *5 (D. Md. Feb. 14, 2019 (converting preempted "MWPCL and

breach of contract claims for long-term disability benefits" into ERISA claims under § 502 and § 510). And, this implicates the question as to whether such a claim complies with Rule 12(b)(6).

### D. Sufficiency of Allegations

Defendant urges dismissal of the Complaint for failure to allege facts that, if proven, would show that the "alleged harassment occurred with the purpose of interfering with [plaintiff's] pension benefits." ECF 5-1 at 11. JHHS also argues that plaintiff has failed to plead facts that show any actions of JHHS could have affected a pension earned with a prior employer, or facts supporting a "conspiracy or any other arrangement between JHHS" and the Johns Hopkins School of Medicine. *Id.*

In response, plaintiff asserts that she has set forth a claim under ERISA § 510. ECF 8 at 3 (citing *Williams v. Wright*, BPG-21-2076, 2022 WL 2818949 (D. Md. July 19, 2022)). And, she argues that the Motion contains "unsupported factual allegations that are not properly before the Court." *Id.* In the Reply, JHHS maintains that the Complaint " is devoid of allegations that, even taken as true, are "enough to raise a right to relief above the speculative level . . ."[4]

As noted, § 510 of ERISA, 29 U.S.C. § 1140, makes it unlawful, *inter alia*, "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . . ."

"[T]he primary focus of § 510 is to 'prevent[ ] unscrupulous employers from discharging or harassing their employees. . . .'" *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239

---

[4] JHHS also distinguishes this case from *Williams,* 2022 WL 2818949. *See* ECF 9 at 4-6. Plaintiff appears to cite *Williams,* 2022 WL 2818949, merely for the § 510 prima facie claim standard. ECF 8 at 3.

(4th Cir.1991) (citation omitted). Accordingly, § 510 applies when the employer engages in conduct affecting the employment relationship. *See Ingersoll–Rand*, 498 U .S. at 143 ("By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting."); *see also Stiltner v. Beretta U.S.A. Corp*., 74 F.3d 1473, 1484 (4th Cir. 1996) ("[I]n cases involving interference with the attainment of ERISA rights, numerous courts have limited "'discriminate against,' as used in ERISA § 510, to actions affecting the employer-employee relationship."); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3rd Cir. 1994) (concluding that § 510 is "limited to actions affecting the employer-employee relationship"), *cert. denied*, 513 U.S. 1149 (1995); *McGath v. Auto–Body N. Shore, Inc.*, 7 F.3d 665, 667–69 (7th Cir. 1993) (interpreting § 510 to encompass only discrimination in the employment relationship); *Woolsey v. Marion Labs., Inc*., 934 F.2d 1452, 1461 (10th Cir. 1991) (stating that an employer's acts must affect the employment situation to create a cognizable claim under § 510).

In general, there are "two avenues" at trial by which a plaintiff may prove interference in violation of 29 U.S.C. § 1140. An ERISA interference claim may be proven through direct evidence of the employer's specific intent to interfere, such as an admission by the employer that the employee was fired to prevent the vesting of benefits. *See Goode v. Am. Veterans, Inc*., 874 F. Supp. 2d 430, 452 (D. Md. 2012). The Fourth Circuit recognizes, however, that "employers do not often articulate the motivation for their actions, particularly if those actions are unlawful." *Id*. Accordingly, employees may also utilize the burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in the context of a Title VII employment discrimination action. *See Conkwright*, 933 F.2d at 239.

Under the *McDonnell Douglas* proof scheme, the plaintiff *at trial* must first establish, by a preponderance of the evidence, a prima facie case of interference. *Id*. To establish a prima facie case of ERISA interference, the employee must demonstrate that (1) the employer performed a prohibited action; (2) the action was taken for the purpose of interfering; and (3) the action interfered with the attainment of a right to which the employee is, or may become, entitled. *Id*. (citing *Gavalik v. Cont'l Can Co.,* 812 F.2d 834, 852 (3d Cir. 1987)). If the plaintiff establishes a prima facie case, a presumption of illegal interference arises, and the burden of production shifts to the employer to produce evidence of a legitimate reason for the challenged conduct. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (Title VII case). "If the employer carries its burden and successfully demonstrates a legitimate, nondiscriminatory explanation, the burden then shifts back to the plaintiff, who is given the opportunity to establish by a preponderance of the evidence that the defendant's explanation is pretextual." *Goode*, 874 F.Supp.2d at 853 [453].

These two methods of proof establish the standards to prove ERISA interference at trial. But, at the motion to dismiss stage, they only serve to inform a court's evaluation of the allegations. Accordingly, as in the analogous context of a Title VII discrimination claim, a complaint need not "contain specific facts establishing a prima facie case . . . under the framework set forth in *McDonnell Douglas*." *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 508 (2002) (Title VII case). Rather, as with any other claim falling within the purview of Rule 8(a), "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012) (Title VII case).

Plaintiff's allegations are conclusory. For example, plaintiff does not explain what right under the pension plan she was prevented from exercising or how any adverse employment actions interfered with her rights under the pension plan.

But, plaintiff never sought to file suit in federal court. To the contrary, she filed suit in the State's District Court, which handles relatively small matters. And, she did so using a form provided by the Court, which is meant to simplify the process of filing suit. Plaintiff cannot be faulted for failing to meet the pleading standards of federal court.

Indeed, plaintiff informs the Court that "Harris's Complaint was prepared on the prescribed Maryland form for complaints filed in the District Court of Maryland which provides for a limited statement of a party's claim." ECF 8 at 4. Therefore, she seeks leave to amend her suit. *Id.* In the Reply, JHHS opposes plaintiff's request to amend. ECF 9 at 7-8. JHHS argues that granting leave to amend would be futile as the "facts alleged" cannot support a claim under § 510. *Id.* at 8.

"Fed. R. Civ. P. 15(a)(2) provides that courts 'should freely give leave' to parties to amend pleadings 'when justice so requires.'" *Sohrabi v. Mirghahari*, GJH-20-2001, 2023 WL 1416020 at *2 (D. Md. Jan. 31, 2023) (citing Fed. R. Civ. P. 15(a)(2)). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The decision whether to grant leave to amend a complaint lies within the sound discretion of the district court. *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993) (internal citation omitted).

The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v.*

*Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). Of relevance here, an amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. An amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). The court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

It is also significant that discovery has not yet begun. *See Brathwaite v. Helm,* GLS-22-1457, 2023 WL 185176 at *1 (D. Md. Jan. 12, 2023); *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.,* ELH 16-3431, 2017 WL 2377105 at *9 (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).  I cannot yet determine whether the facts that plaintiff seeks to add in an amended complaint will be sufficient to meet the pleading standard for an ERISA claim. Accordingly, I shall grant plaintiff leave to amend.  And, because I will permit plaintiff to amend her suit, I shall deny, as moot, the portion of the Motion premised on Fed. R. Civ. P. 12(b)(6).

**V. Conclusion**

For the reasons stated above, I shall construe the portion of defendant's Motion under Rule 12(b)(5), concerning insufficiency of service of process, as a motion to quash service.  And, to that extent, I shall grant the Motion. I shall also grant plaintiff leave to amend her suit.  Therefore, I shall deny, as moot, the portion of the Motion based on Rule 12(b)(6).

An Order follows, consistent with this Memorandum Opinion.

Date:   May 23, 2023                                          _____/s/_____
                                                                              Ellen L. Hollander
                                                                              United States District Judge

22